Eastern District of Kentucky
FILED
OCT 1 4 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 05-30-SSS-DCR

UNITED STATES OF AMERICA,      PLAINTIFF

VS.      **REPORT AND RECOMMENDATION**

JENNINGS B. WHITE, et al      DEFENDANTS

\*\*\*\*\*\*\*

This matter is before the Court upon the "Motion to Suppress Wiretap Evidence" (DE#316) filed by the co-defendant Jennings White. The other co-defendants have also moved to suppress the wiretap evidence. See DE#333, 345, 348, 350, 359, 363, 365, 368, 371, 411.[1] The United States was given an extension of time to respond, and has now filed responses (DE#330, 386). Having carefully considered the record, the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I. Issues Presented

The defendants seek suppression of all wiretap evidence, and all evidence derived therefrom, see DE#316, p. 1-2, because the supporting affidavit allegedly did not provide a sufficient basis for the issuing judge to find adequate compliance with 18 U.S.C. §2518(1)(c) and (3)(c). The United States asserts that the application for wiretap sufficiently complied with the such statutory requirements and that suppression is not warranted.[2]

---

[1] The oral motion to join by co-defendant Garrison was granted by written order. DE#383. The oral motion to join by co-defendant Hubbard was granted at the hearing on September 28, 2005. DE#406.

[2] The federal wiretap statute, at 18 U.S.C. §2518 (9), mandates that: "The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial,

## II. Findings of Fact

On March 7, 2005, FBI Special Agent Tim Briggs presented an application for a federal wiretap of telephone number 606-596-0750 to United States District Judge Danny C. Reeves of the Eastern District of Kentucky. The subject telephone number was subscribed to by Kenneth Day at his business "KD's Pawnshop" in Manchester, Kentucky. The application was supported by the 47-page affidavit of Agent Briggs. The affidavit set forth detailed facts about the ongoing investigation of a major drug-trafficking organization in Clay County, Kentucky, referred to as the "Kenny Day illegal drug distribution business". The supporting affidavit included information about various investigative methods employed to date in this investigation, as well as other investigative methods that were considered, but rejected, and provided the reasons why the affiant agent believed electronic surveillance was now appropriate. District Judge Danny C. Reeves authorized the wiretap, and subsequently, authorized a renewal of the wiretap on or about April 11, 2005.

## III. Conclusions of Law

### Fourth Amendment

A person's right to be free from unreasonable searches and seizures arises from the Fourth Amendment to the United States Constitution, which specifically provides:

> "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

---

hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved...." On May 14, 2005, the District Judge issued an order authorizing disclosure of intercepted wire, oral and/or electronic communications. The record reflects that the United States has provided the co-defendants with copies of the pertinent order and application, and thus, facts regarding the wiretap at issue may be discussed in this proceeding.

**"Standing" of Co-defendants**

As a preliminary matter, the issue of "standing" of the various co-defendants must be addressed, as they have indicated they are adopting White's arguments. In its supplemental response (DE#386), the United States correctly points out that only those individuals whose personal rights were allegedly violated may move for suppression.

The federal wiretap statute, at 18 U.S.C. §2518(10)(a) provides that any "aggrieved person" may move to suppress the contents of any wire or oral communication intercepted pursuant to Title III, or any fruits derived therefrom, on the grounds that the communication was unlawfully intercepted or was not made in conformity with the authorizing order.[3] The statute at 18 U.S.C. §2510(11) defines an "aggrieved person" as a person who is (1) a party to any intercepted communication, or (2) a person against whom the interception was directed.

"Courts have long recognized that Congress's intent was to apply the existing law of Fourth Amendment standing to wiretap cases." United States v. Martin, 169 F.Supp.2d 558, 563 -564 (E.D.La. 2001); see also, United States v. Scasino, 513 F.2d 47, 50 (5th Cir.1975); and see, S.Rep. No. 1097, 90th Cong., 2d Session. In Alderman v. United States, 394 U.S. 165, 171-72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969), the United States Supreme Court held that "standing" for Fourth Amendment purposes is narrowly construed to include only those whose personal privacy rights are actually violated. In United States v. Cooper, 868 F.2d 1505, 1509-10 (6th Cir.), *cert. denied*, 490 U.S. 1094 (1989), the Sixth Circuit Court of Appeals explained that:

"Before an accused may be heard to complain that the prosecution evidence

---

[3] 18 U.S.C. §2518(10)(a) (10)(a) specifically provides in relevant part: "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that--

(i) the communication was unlawfully intercepted;
(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
(iii) the interception was not made in conformity with the order of authorization or approval."

should be suppressed because it was come by illegitimately, he must first make out his standing, which generally entails a demonstration that his own interests were affected by the challenged search or seizure. With particular regard to electronic eavesdropping, the accused must show that it was directed at *him*, that the government intercepted his conversations, or that the wiretapped communications occurred at least partly on *his* premises." (Italics in original).

Thus, given that the United States indicates that the calls were intercepted only from the telephone at the premises of Kenneth Day, the co-defendants would have an assertable personal interest only to the extent that they actually participated in specific intercepted calls. In other words, the respective defendants' "standing" in this case does not attach to all conversations, but rather, to the specific conversations in which each participated. See United States v. Scasino, 513 F.2d 47 (5th Cir. 1975)(holding that an "aggrieved person" for purposes of standing to challenge a wiretap is a person who participated in the intercepted conversation or whose premises was wiretapped); United States v. Restrepo, 890 F.Supp. 180 (E.D. N.Y. 1995)(holding that defendant had participated in the taped conversation, and thus, his suppression claim was based on the alleged violation of his own rights).

**Wiretaps**

Wiretaps may be authorized under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §2510-2522. Specifically, 18 U.S.C. §2518 requires that:

> (1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. *Each application shall include the following information*:
>
> (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;
> (b) a full and complete statement of the facts and circumstances relied upon

by the applicant, to justify his belief that an order should be issued, including (I) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

(c) *a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous*;

(d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results. (Italic added).

In addition, 18 U.S.C. §2518(3)(c) provides in relevant part:

"Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that--

>   (c) *normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.....*" (Italic added).

The defendants contend that the supporting affidavit did not provide a sufficient basis for the issuing judge to find adequate compliance with 18 U.S.C. §2518(1)(c), which requires each application to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

The United States responds that the defendants are not entitled to suppression because the application for wiretap adequately complied with the requirements of the wiretap statute, including 18 U.S.C. §2518(1)(c) and (3)(c). See, e.g., United States v. Stewart, 306 F.3d 295, 306 (6th Cir. 2002), *cert. denied*, 537 U.S. 1138 (2003)(holding that the information stated in the supporting affidavit was sufficient to authorize electronic surveillance).

The affidavit plainly reflects that considerable investigation by various methods had already occurred and that the requested interception of telephone conversations was not "employed as the initial step in the criminal investigation." United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974); and see, United States v. Alfano, 838 F.2d 158, 163 (6th Cir. 1988) (observing that Congress intended the statutory requirements of 18 U.S.C. §2518 to ensure that "wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose the crime."); Stewart, 306 F.3d at 306 (observing that the wiretapping was not the initial step in that investigation).

In the present case, the detailed and lengthy affidavit contained an adequate statement concerning various traditional investigative methods already used and the limits and short-comings of those techniques under the specific circumstances of this long-term investigation. The United States correctly points out that the affidavit discussed the results of and limitations of physical surveillance by agents, the various pen registers already issued, the use of subpoenas to the Grand Jury, and other methods. For example, the United States indicates that the affiant agent had indicated that in 2000, nine persons involved with Larry Jackson were subpoenaed to testify before a federal Grand Jury in London, but all nine exercised their Fifth Amendment privilege and refused to testify. The agent also discussed the limitations of pen registers with respect to the investigation of this particular

drug-trafficking conspiracy and its members, much of whose business was believed to be occurring over the telephone. See, e.g., ¶17, 22-24, 26, 28, 36, 44. The Sixth Circuit Court of Appeals has observed that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation". Stewart, 306 F.3d at 305, quoting United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. ), cert. denied, 434 U.S. 855 (1977).

The affidavit also indicated that additional investigative techniques had been given serious consideration, but were rejected as not feasible under the circumstances of this case. For example, the affidavit indicated the subject conspirators in this tight-knit small rural community did not like to deal with outsiders, had a security camera at KD's Pawnshop, engaged in counter-surveillance, and would have easily noticed any sort of pole camera being installed. See, e.g. ¶29. The agent also indicated that he had personally been recognized on at least one occasion while attempting to surveil suspects during this investigation. The practical considerations of attempting to conduct physical surveillance of watchful suspects in the small town and/or rural areas at issue here are inherently different and more difficult than conducting the same type of surveillance in a busy urban setting.[4] The agent sufficiently indicated in adequate detail that certain investigative procedures reasonably appeared "unlikely to succeed" if tried or would be too dangerous.

The agent provided a sufficient statement indicating that certain investigative procedures had been tried, and although some recorded controlled buys had been made (see ¶9), such method of investigation was not able to fully develop information regarding the full scope of the drug-trafficking organization. To date, the investigation had used at least one co-operating individual to make recorded controlled buys. See ¶ 21. However, the affidavit reflected that, given the conspirators mistrust of outsiders, it was difficult to develop confidential sources, and that the one source obtained to date was insufficient to develop the full range of investigative information sought concerning the drug-trafficking conspiracy. Moreover, the affidavit indicated that individuals were reluctant to cooperate due to a justifiable fear of retaliation by the conspirators. See ¶11. The affidavit included considerable information substantiating the basis for such fear of retaliation and intimidation. See, e g., ¶26.

---

[4]Although the defendants point to the *Vontella Jones* case in this Court as an example of the use of a pole camera, the United States points out that the circumstances of that case (i.e. an "open-air" market) made the use of such investigative technique particularly useful. The facts of the present case are quite different, as is comprehensively set forth in the agent's affidavit.

Although the defendants argue that the affiant agent had been successful in much of his investigation to date and could have continued to use these traditional investigative methods without resorting to a wiretap, the affiant agent carefully set forth why such normal investigative procedures reasonably appeared "unlikely to succeed" in developing the full scope of the conspiracy. He also indicated why certain investigative methods were too dangerous or likely to compromise the entire investigation, and why there was a need for wire interception. See Affidavit, p. 35-44. The defendants argument essentially amounts to a claim that the affiant agent could have done even more to pursue various non-wiretap methods of investigation, such as a "trash-pull". However, the affidavit presented in this case satisfied the statutory requirements of 18 U.S.C. §2518(1)(c) and (3)(c).

As the Sixth Circuit Court of Appeals observed in United States v. Giacolone, 853 F.2d 470, 480 (6th Cir. 1988):

> "What is needed is to show that wiretaps are not 'being routinely employed as the initial step in criminal investigations." However, the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted. *Alfano*, 838 F.2d at 163 (citations omitted)....All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate. 838 F.2d at 163-64 (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985))."

See also, Cooper, 868 F.2d at 1510 (reciting the language that "All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate".). "The mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." Stewart, 306 F.3d at 305-306. Accordingly,

## RECOMMENDATION

It is **RECOMMENDED** that:

1) the "Motion to Suppress" (DE#316) by the co-defendant Jennings White should be **DENIED**;

2) to the extent that any co-defendants have standing to challenge the wiretap of any conversations in which they participated, their written or oral motions to suppress (DE#333, 345, 348, 350, 359, 363, 365, 368, 371, 411) should also be **DENIED**.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. United States v. Walters, 638 F.2d 947 (6th Cir. 1981); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See Howard v. Secretary of Health and Human Services, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 14th day of October, 2005.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge